**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JASMINE TIMMERSON,

       Plaintiff,                Case No. 2:26-cv-223

v.

UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, and TORY VERDI, an individual,        **COMPLAINT**

       Defendants.

Filed on behalf of Plaintiff, Jasmine Timmerson

Counsel of Record for this Party:
Keenan Holmes, Esquire (PA ID #204520)

**JURY TRIAL DEMANDED**

Ebony Law, LLC
213 Smithfield Street
Pittsburgh, PA 15222

Phone: (724) 263-7530
Email: kh@ebonylaw.com

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JASMINE TIMMERSON, | :   Case No. 2:26-cv-223 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNIVERSITY OF PITTSBURGH OF | : |
| THE COMMONWEALTH SYSTEM | : |
| OF HIGHER EDUCATION, and | : |
| TORY VERDI, an individual | : |
| | : |
| Defendants. | : |

**COMPLAINT**

**INTRODUCTION**

1.      Plaintiff Jasmine Timmerson ("Plaintiff" or "Ms. Timmerson") brings this civil rights action against Defendants the University of Pittsburgh ("University") and Head Women's Basketball Coach Tory Verdi ("Defendant Verdi") for violations of her rights under Title IX of the Education Amendments of 1972, 42 U.S.C. § 1983, and related state law claims.

2.      This case arises from a toxic, psychologically abusive, and discriminatory environment within the University's women's basketball program, perpetuated by Defendant Verdi and enabled by the University's deliberate indifference, failure to supervise, and failure to protect its student-athletes.

3.      Ms. Timmerson was subjected to sustained emotional neglect, exclusion, favoritism, and retaliatory treatment that undermined her athletic development, deprived her of

the benefits of her scholarship, and ultimately forced her out of the program through non-renewal of her athletic scholarship.

4.     Although Defendant Verdi never explicitly stated "you are cut," the conditions imposed upon Ms. Timmerson were so intolerable, arbitrary, and psychologically corrosive that her departure was not voluntary. It constituted a constructive exclusion/constructive expulsion under federal civil rights law and Title IX.

5.     Defendants' actions caused Ms. Timmerson significant emotional distress, loss of educational and athletic opportunity, reputational harm, and disruption of her collegiate career, all of which were foreseeable, preventable, and the direct result of Defendants' unlawful conduct.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law, including Title IX and 42 U.S.C. § 1983.

7.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the University is located within this District and a substantial part of the events giving rise to these claims occurred here.

## PARTIES

9.     Plaintiff Jasmine Timmerson is a former student-athlete who enrolled at the University of Pittsburgh on an athletic scholarship to participate in the NCAA Division I women's basketball program.

10.     Defendant University of Pittsburgh is a public university and recipient of federal financial assistance subject to Title IX and constitutional obligations.

11.     Defendant Tory Verdi is the Head Coach of the University of Pittsburgh women's basketball program.

12.     At all relevant times, Defendant Verdi acted under color of state law in his capacity as an employee, supervisor, and representative of the University.

13.     Defendant Verdi is sued in his individual capacity for acts taken within and beyond the scope of his employment that violated Plaintiff's constitutional and statutory rights and caused severe emotional harm.

## FACTUAL ALLEGATIONS

### Recruitment, Scholarship, and Plaintiff's Reliance on Institutional Assurances

14.     Plaintiff enrolled at Defendant University to compete in its NCAA Division I women's basketball program and to pursue educational and professional advancement through athletics.

15.     Plaintiff committed to the University under a prior coaching staff and accepted a full athletic scholarship tied to her participation in the women's basketball program.

16.     As part of her scholarship and recruitment relationship, Plaintiff was led to expect that she would be welcomed into a program focused on development, support, and legitimate athletic growth.

17.     Plaintiff's scholarship provided tuition, room and board, and other educational benefits directly connected to her role as a student-athlete.

18.     The scholarship was not merely financial in nature; it represented a contractual promise and a protected property interest, including access to educational programs, athletic participation, academic support, and institutional resources.

19.     Plaintiff met all obligations under her scholarship agreement, including maintaining academic eligibility, complying with team expectations, and remaining committed to the program.

20.     Plaintiff relied on the University's obligations as a federally funded Division I institution governed by NCAA rules, Title IX, and constitutional law.

21.     Plaintiff relied on the University to provide a lawful and supportive environment that would allow her to participate in intercollegiate athletics without fear of retaliation, discrimination, or coercion.

22.     Plaintiff further relied on the University's Student-Athlete Handbook, compliance policies, and institutional assurances promising a safe, non-retaliatory, and equitable athletic environment.

**Title IX Obligations, Governance Duties, and Institutional Control**

23.     Under Title IX of the Education Amendments of 1972, Defendant University had both statutory and regulatory obligations to prevent and respond to sex-based discrimination, including the creation and perpetuation of a hostile educational, playing, and work environment through verbal, emotional, and psychological misconduct.

24.     These obligations included the duty to prevent, investigate, and remedy hostile educational, playing, and work environments created through verbal, emotional, and psychological misconduct.

25.    Defendant University exercised control over the women's basketball program, including authority over the hiring, retention, supervision, evaluation, and discipline of coaching staff.

26.    Plaintiff, a scholarship student-athlete under the control and direction of the University, was required to operate within the women's basketball program as structured, supervised, and enforced by Defendant University and its agents.

27.    Defendant University owed a duty to ensure that student-athletes could raise concerns regarding misconduct without fear of retaliation, loss of scholarship, or exclusion from the program.

28.    Defendant University, through its governance structure and administrative inaction, knowingly created and maintained a psychologically abusive and emotionally volatile environment within the women's basketball program that posed a foreseeable and escalating risk of harm to Plaintiff and other players.

**Coach Verdi's Authority, Special Relationship, and Abuse of Power**

29.    Defendant Verdi exercised near-total control over the daily athletic, academic, and psychological experiences of the women's basketball team.

30.    Through his role as Head Coach, Defendant Verdi was entrusted with the care, development, and well-being of student-athletes.

31.    This position of authority created a special relationship and imposed a duty of care to avoid conduct that would foreseeably cause emotional or psychological harm.

32.    Defendant Verdi used his position of authority to engage in emotionally abusive conduct, retaliation, and psychological manipulation that transcended poor coaching and entered into constitutional and statutory violations.

33.     Under Defendant Verdi's leadership, the program was defined by fear and emotional volatility, as players were routinely demeaned, psychologically isolated, and pressured to perform under abusive and destabilizing conditions.

34.     Defendant Verdi fostered a culture of public shaming and arbitrary punishment by maintaining a rigid and controlling atmosphere in which players were discouraged from speaking up and punished if they did.

35.     Plaintiff and her teammates individually and collectively witnessed and experienced patterns of emotional mistreatment. These actions were not isolated or incidental, but reflected a broader pattern of psychological abuse carried out under the pretext of coaching.

**Hostile and Psychologically Abusive Team Environment During the 2023-2024 Season**

36.     Plaintiff played during the 2023-2024 season and was subjected to repeated, severe, and objectively offensive verbal and psychological mistreatment by Defendant Verdi that altered the conditions of her education and athletic participation.

37.     Plaintiff was routinely marginalized, mischaracterized, and pressured to perform under destabilizing conditions that prioritized fear and manipulation over development and well-being.

38.     Defendant Verdi used exclusion, favoritism, and intimidation as tools of control within the program.

39.     Defendant Verdi openly minimized and dismissed mental health concerns, signaling that emotional distress was not worthy of support or accommodation.

40.     Defendant Verdi's hostility toward mental health concerns emboldened a culture in which emotional distress was stigmatized, ignored, and weaponized against players.

41.     Players were made to fear making mistakes or voicing concerns because those who did were retaliated against through exclusion, loss of playing time, verbal reprimand, or humiliation.

**Manipulation, Gaslighting, and Arbitrary Control Mechanisms**

42.     Defendant Verdi repeatedly shifted explanations about player roles and performance, gaslighting players and distorting reality to maintain control.

43.     Defendant Verdi implemented erratic and manipulative tactics, including the so-called "practice cauldron," in which performance statistics were fabricated or manipulated to arbitrarily discredit certain players.

44.     The "practice cauldron" functioned as a tool of favoritism and psychological control rather than legitimate player development.

45.     These manipulative tactics created confusion, anxiety, and a constant sense of instability within the program.

**Public Humiliation, Emotional Degradation, and Disturbing Statements**

46.     Defendant Verdi frequently belittled players' appearances, mocked their personalities, and accused players of being "bad people," eroding morale and self-worth.

47.     After a practice during the 2023-2024 season, Defendant Verdi told the team, "Every night I lay in bed I want to kill myself because of you," placing the emotional burden of his own instability onto players while simultaneously serving as the source of their distress.

48.     In another team meeting following the death of a teammate's father, Defendant Verdi berated the team, stating, "I knew you guys were bad basketball players, but I didn't know you were bad people too."

49.    These statements exemplified a sustained pattern of emotional abuse, degradation, and public humiliation that permeated the program.

50.    The environment created by Defendant Verdi was psychologically unsafe, coercive, and destabilizing, and it foreseeably caused emotional harm to Plaintiff and other student-athletes.

**Racial Division and Compounding Harm**

51.    Defendant Verdi intentionally attempted to create racial division among team members.

52.    On one occasion, Defendant Verdi pitted white players against Black players by asserting that players "hung out" only with others of the same race.

53.    Defendant Verdi used this moment to single out another player, Isabella Perkins, stating during a team meeting that she was in the "middle" because, although she was white, she appeared to prefer socializing with Black teammates.

54.    Defendant Verdi was confronted by a player regarding racism based on how he treated Black players on the team.

55.    When confronted, Defendant Verdi responded by stating that some teammates were not "good people" and were "lucky to still be on the team," further weaponizing his authority.

56.    Defendant Verdi later convened a meeting during which he challenged whether the players even knew the definition of racism, escalating division and instability within the team.

57.    Plaintiff personally observed these racial dynamics, which compounded the emotional abuse already present and intensified her sense of isolation, fear, and instability.

**Gender-Based Hostility and Sex-Based Discrimination**

58.     The hostile environment within the women's basketball program was marked by gendered expectations, the silencing of female players, and a culture of intimidation.

59.     Defendant Verdi's conduct reflected a gendered lens through which he evaluated female athletes, including demeaning commentary and behavior that reduced women's value to compliance and appearance rather than athletic skill.

60.     Defendant Verdi's hostility toward female athletes included sex-based and gender-stereotyped commentary that was degrading, irrelevant to performance, and intended to demean and control.

61.     Plaintiff and her teammates repeatedly observed that male athletes at the University were not subjected to comparable humiliation, commentary, or retaliation for performance issues or for expressing concerns.

62.     The University's failure to act in the face of clear gender-based mistreatment reinforced the perception that women athletes were uniquely subjected to ridicule, punishment, and exclusion and lacked equal protection under University policy.

**Plaintiff's Mental Health Deterioration and Resulting Harm**

62.     The cumulative impact of Defendant Verdi's conduct caused Plaintiff to suffer severe anxiety, depression, emotional exhaustion, and mental distress.

63.     Plaintiff sought therapy and mental health treatment as a direct result of the psychologically unsafe environment.

64.     Plaintiff's emotional withdrawal and deterioration were observable to coaching staff and administrators.

65.     Plaintiff's emotional injuries were not speculative; they were the predictable result of prolonged exposure to negligent and harmful conduct by a person in institutional authority.

66.     Plaintiff's psychological injuries required ongoing mental health treatment and persisted beyond her departure from the University, interfering with her academic performance, sense of personal safety, and ability to trust institutional authority.

**Institutional Knowledge, Negligent Supervision, and Deliberate Indifference**

67.     Defendant University had a duty to exercise reasonable care in the hiring, retention, and supervision of its athletic personnel, including Defendant Verdi.

68.     At the time of hiring and throughout his tenure, Defendant University knew or should have known that Defendant Verdi exhibited emotionally abusive coaching tactics, retaliatory behavior, and discriminatory treatment of players.

69.     These red flags were visible to athletic administrators, support staff, and other members of the University community.

70.     Defendant University had actual knowledge of Defendant Verdi's misconduct through reports made by Plaintiff, her teammates, other coaches, and parents of student-athletes.

71.     Defendant University's actual knowledge included reports not only from players, but also from parents and family members, raising concerns regarding Defendant Verdi's verbal abuse, emotional mistreatment, retaliation, psychological manipulation, and inappropriate commentary.

72.     Despite receiving multiple reports of verbal and emotional mistreatment, threats of retaliation, psychological manipulation, and inappropriate commentary, Defendant University failed to intervene, investigate, or take meaningful disciplinary action.

73.     No formal investigation was conducted, no interim measures were offered, and Defendant Verdi was allowed to continue coaching without restriction.

74.     This institutional inaction directly increased Plaintiff's exposure to harm and constituted deliberate indifference.

**Protected Activity, Actual Notice, and Retaliatory Climate**

75.     Plaintiff engaged in protected activity by raising concerns about Defendant Verdi's abusive conduct and the hostile environment.

76.     Plaintiff met with Jennifer Tuscano and reported that Defendant Verdi had created a hostile and abusive environment within the program.

77.     Plaintiff's disclosures placed Defendant University on actual notice of ongoing misconduct and the harm being inflicted on student-athletes.

78.     Plaintiff personally observed retaliation inflicted upon other players and reasonably understood that formal complaints would not lead to protection, but instead expose players to heightened retaliation, scholarship threats, and forced removal.

79.     Plaintiff further observed that retaliation was implemented through multiple adverse mechanisms, including reduced playing time, exclusion from leadership opportunities, manipulated performance metrics used to justify marginalization, and targeted scrutiny following protected disclosures.

80.     Plaintiff personally observed that players who raised concerns were met not with protection, but with heightened scrutiny and exclusion, creating a chilling effect on protected activity.

81.     This environment of fear and silence was cultivated through deliberate inaction by Defendant University and exploited by Defendant Verdi as a tool of control.

**Scholarship Deprivation, Procedural Failures, and Constructive Revocation of Educational Benefits**

81.     Plaintiff was awarded a full athletic scholarship as part of her recruitment to play for the women's basketball team, which included access to educational programs, athletic participation, academic support, and institutional resources.

82.     Plaintiff had a reasonable expectation, based on the scholarship agreement, Student-Athlete Handbook, and institutional assurances, that she would be provided a safe and non-retaliatory team environment and institutional support.

83.     After Plaintiff engaged in protected activity, Defendant Verdi informed Plaintiff that her scholarship would not be renewed.

84.     The threatened and actual non-renewal of Plaintiff's scholarship functioned as a coercive ultimatum: accept removal from the program or risk immediate loss of financial and educational support.

85.     In addition to scholarship coercion, Defendant Verdi and the athletic department utilized NCAA transfer mechanisms as an additional tool of forced removal.

86.     Plaintiff observed and understood that the program employed transfer pressure and threats of portal placement as a means of compelling silence and compliance.

87.     Under NCAA regulations and University compliance policies, only a student-athlete may initiate entry into the transfer portal; coaches possess no unilateral authority to do so. Nevertheless, Defendant Verdi's conduct and threats created a coercive ultimatum: accept removal from the program or risk immediate loss of scholarship, housing, academic continuity, and eligibility.

88.    The non-renewal constituted a constructive revocation of Plaintiff's scholarship and protected property interest without notice, hearing, or meaningful opportunity to be heard.

89.    Defendant University failed to provide Plaintiff with access to meaningful grievance procedures or appeal mechanisms regarding the deprivation of her scholarship and athletic participation.

90.    No formal Title IX investigation was initiated in response to Plaintiff's disclosures.

91.    Plaintiff was never afforded a hearing, formal review, written explanation, or meaningful opportunity to be heard regarding the deprivation of scholarship-related benefits and her constructive exclusion from the program.

92.    The absence of transparent and equitable grievance procedures left Plaintiff vulnerable to unchecked mistreatment, compounded the retaliation and discrimination already inflicted, and further eroded Plaintiff's access to the educational and athletic opportunities for which she was recruited.

**Constructive Discharge, Forced Transfer, and Loss of Educational Benefits**

90.    The hostile environment, retaliatory conduct, and scholarship deprivation rendered Plaintiff's continued participation impossible.

91.    Plaintiff's removal from the program was not voluntary.

92.    Defendants deliberately made Plaintiff's conditions so intolerable that a reasonable student-athlete would have felt compelled to leave.

93.    Plaintiff was forced into the NCAA transfer process and compelled to leave the University of Pittsburgh to preserve her academic and athletic future.

94.     This constituted a constructive discharge and constructive revocation of Plaintiff's scholarship and educational benefits.

95.     Defendants' actions created an intolerable environment in which Plaintiff was effectively deprived of the benefits and opportunities of participation in the University's women's basketball program.

96.     Plaintiff's departure from the program was not voluntary in any meaningful sense, but rather the foreseeable result of coercion, retaliation, and deliberate indifference that forced Plaintiff out of the program and denied her equal access to educational opportunities. Plaintiff was thereby constructively excluded and constructively expelled from the program.

97.     Plaintiff suffered damages as a direct and proximate result.

**Systemic Institutional Failure and Resulting Title IX Liability**

95.     Plaintiff's experience was not an isolated incident but part of a broader systemic failure by Defendant University to monitor, regulate, and respond to the conduct of its coaching staff and the environment they fostered.

96.     Defendant University's deliberate indifference to known harassment and retaliation deprived Plaintiff of access to the educational and athletic opportunities for which she was recruited.

97.     Plaintiff's Title IX claims do not rest on allegations of unequal funding or facilities but on the University's failure to prevent, investigate, and remedy severe, pervasive, and objectively offensive psychological and emotional abuse.

98.     Title IX liability attaches where a federally funded institution is deliberately indifferent to harassment and retaliation that deprives a student of educational access.

99.    As a direct and proximate result, Plaintiff suffered emotional distress, reputational harm, medical expenses, disruption of her education, damage to her athletic trajectory, loss of scholarship benefits, and loss of educational and professional opportunities.

## CAUSES OF ACTION

### Count I - Violation of Title IX (20 U.S.C. §§ 1681-1688) - Hostile Educational Environment (Against Defendant University)

100.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

101.    Title IX prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance.

102.    Defendant University receives federal funding and operates an intercollegiate women's basketball program subject to Title IX.

103.    Plaintiff was subjected to a hostile educational environment through severe, pervasive, and objectively offensive emotional and psychological mistreatment, public humiliation, coercion, and degradation within the women's basketball program.

104.    Defendant Verdi's conduct and the toxic culture he fostered deprived Plaintiff of access to educational benefits and opportunities, including meaningful athletic participation, academic stability, mental-health safety, and equal treatment.

105.    Defendant University had actual knowledge of the hostile environment and responded with deliberate indifference by failing to investigate, supervise, discipline, or implement interim protective measures.

106.    As a direct and proximate result of Defendants' conduct and Defendant University's deliberate indifference, Plaintiff was deprived of equal access to educational

benefits and opportunities and was constructively excluded and constructively expelled from participation in the women's basketball program.  Plaintiff further suffered damages including emotional distress, reputational harm, medical expenses, loss of scholarship benefits, disruption of education, and loss of athletic and professional opportunities.

### Count II - Violation of Title IX - Retaliation
### (Against Defendant University)

107.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

108.    Plaintiff engaged in protected activity under Title IX by raising concerns regarding Defendant Verdi's abusive conduct and the hostile environment within the women's basketball program, including through communications with University officials and administrators.

109.    Defendant University was on notice of Plaintiff's protected activity.

110.    Following Plaintiff's disclosures, Defendant Verdi retaliated by marginalizing Plaintiff and informing her that her scholarship would not be renewed.

111.    The scholarship non-renewal and constructive exclusion constituted materially adverse actions that would deter a reasonable student-athlete from engaging in protected activity.

112.    Defendant University failed to prevent, stop, or remedy the retaliation despite actual notice, thereby exhibiting deliberate indifference.

113.    Plaintiff suffered damages including emotional distress, loss of scholarship benefits, disruption of education, and loss of athletic and professional opportunities.

114.    As a direct and proximate result of Defendants' conduct and Defendant University's deliberate indifference, Plaintiff was deprived of equal access to educational

benefits and opportunities and was constructively excluded and constructively expelled from participation in the women's basketball program.

## Count III - Violation of Title IX - Coercion, Constructive Exclusion, and Scholarship-Based Deprivation of Educational Access
### (Against Defendant University)

114.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

115.    Defendant University, through its agent Defendant Verdi, used scholarship non-renewal and the threat of loss of educational benefits as an economic weapon to compel silence, compliance, and removal from the program.

116.    The coercive deprivation of Plaintiff's scholarship and athletic participation constituted constructive exclusion from the educational program and activity for which she was recruited.

117.    Defendant University knew or should have known that scholarship deprivation under these circumstances would foreseeably force Plaintiff into transfer and deprive her of educational access.

118.    Defendant University's deliberate indifference to this coercion and deprivation violated Title IX.

## Count IV - Violation of Title IX - Failure to Provide Required Grievance Procedures and Denial of Equitable Process
### (Against Defendant University)

119.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

120.    Despite Plaintiff's good-faith efforts to report misconduct through University channels, Defendant University failed to provide the procedural protections required under Title IX.

121.    Defendant University failed to initiate a formal investigation and failed to provide Plaintiff a fair, transparent, and equitable grievance process.

122.    Plaintiff was denied a hearing, formal review, written explanation, and meaningful opportunity to be heard regarding her scholarship non-renewal and constructive exclusion.

123.    The denial of equitable process compounded the discrimination and retaliation and further deprived Plaintiff of educational access in violation of Title IX.

**Count V - 42 U.S.C. § 1983 - Fourteenth Amendment Violations (State-Created Danger; Retaliation; Equal Protection)**
**(Against Defendant University)**

124.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

125.    Defendant Verdi acted under color of state law and exercised state-delegated authority over Plaintiff's education and scholarship benefits.

126.    Defendant Verdi used that authority to expose Plaintiff to a foreseeable risk of psychological harm through coercion, abuse, retaliation, and deliberate manipulation.

127.    Defendant University, through its deliberate indifference and failure to intervene despite actual notice, created and maintained the dangerous conditions that caused Plaintiff harm.

128.    Plaintiff was also denied equal protection because female athletes were subjected to hostile conditions and retaliatory scholarship coercion without comparable protection, accountability, or procedural safeguards.

129.    Plaintiff suffered damages as a result of these constitutional violations.

130.    Defendant University is liable under 42 U.S.C. § 1983 because Plaintiff's injuries were caused by the University's policies, customs, and practices, including deliberate indifference to known coaching misconduct, failure to supervise and discipline athletic personnel, and ratification of Defendant Verdi's retaliatory and abusive conduct. These policies and customs were the moving force behind the constitutional violations and resulting harm suffered by Plaintiff.

**Count VI - 42 U.S.C. § 1983 - Individual Liability of Coach Tory Verdi**
**(State-Created Danger; Retaliation; Equal Protection)**
**(Against Defendant Verdi)**

130.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

131.    Plaintiff was awarded an athletic scholarship as a contractual exchange for participation in the women's basketball program, academic compliance, and athletic contribution, and Plaintiff fulfilled her obligations.

132.    At all relevant times, Defendant Verdi acted under color of state law and exercised state-delegated authority over Plaintiff's participation in the University's women's basketball program, including Plaintiff's athletic standing, scholarship-related benefits, playing time, team inclusion, and access to educational opportunities.

133.    Defendant Verdi is sued in his individual capacity for damages arising from his personal participation in constitutional violations actionable under 42 U.S.C. § 1983.

134.    Defendant Verdi affirmatively used his authority to create, escalate, and maintain a coercive and psychologically unsafe environment, including public humiliation, emotional degradation, intimidation, retaliation, and scholarship-based threats. Defendant Verdi's actions

foreseeably placed Plaintiff in a position of heightened vulnerability and danger, and exposed Plaintiff to a foreseeable and substantial risk of psychological harm and educational disruption.

135.    Defendant Verdi acted with deliberate indifference to Plaintiff's safety and well-being by engaging in and perpetuating conduct that was objectively unreasonable under the circumstances and that foreseeably caused severe emotional distress, deterioration of mental health, and loss of educational and athletic opportunity.

136.    Plaintiff engaged in protected activity by reporting and/or opposing misconduct, discrimination, retaliation, and the hostile environment within the women's basketball program.

137.    Defendant Verdi retaliated against Plaintiff for engaging in protected activity by taking materially adverse actions, including but not limited to, marginalization, exclusion, targeted scrutiny, manipulated performance assessments, scholarship-related threats, and constructive removal from the program. These actions would deter a reasonable student-athlete from engaging in protected conduct.

138.    Defendant Verdi intentionally subjected Plaintiff and similarly situated female student-athletes to discriminatory and unequal treatment, hostility, humiliation, and retaliatory coercion, without legitimate justification, thereby denying Plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment.

139.    Defendant Verdi used his state-delegated authority and position of control to cause and effectuate the deprivation of Plaintiff's scholarship-related benefits and athletic participation without fair notice, transparency, or meaningful opportunity to contest the decision. Defendant Verdi's conduct, including scholarship coercion and forced removal mechanisms, resulted in a deprivation of Plaintiff's protected interests and contributed to Plaintiff's constructive expulsion from the program.

140.    Defendant Verdi's conduct was willful, malicious, and in reckless disregard of Plaintiff's clearly established constitutional rights. Defendant Verdi is therefore individually liable to Plaintiff for compensatory damages, punitive damages, attorneys' fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and all other relief the Court deems just and proper.

**Count VII - Breach of Contract / Deprivation of Property Interest (Scholarship)**
**(Against Defendant University)**

133.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

134.    Plaintiff's athletic scholarship and the University's policies formed a contractual relationship and created a protected property interest.

135.    Plaintiff performed her obligations and remained eligible.

136.    Defendant University, through Defendant Verdi's decision and the University's ratification, constructively revoked Plaintiff's scholarship and the core benefits of participation without fair process.

137.    Plaintiff suffered economic loss, educational disruption, and related damages.

**Count VIII - Intentional Infliction of Emotional Distress**
**(Against Defendant Verdi)**

138.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

139.    Defendant Verdi engaged in extreme and outrageous conduct, including emotional degradation, public humiliation, disturbing statements regarding self-harm, racialized division, and retaliation tied to scholarship deprivation.

140.    Defendant Verdi intended to cause emotional distress or acted with reckless disregard of the likelihood of causing it.

141.    Plaintiff suffered severe emotional distress and damages.

## Count IX - Negligent Infliction of Emotional Distress
## (Against Defendant University)

142.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

143.    Defendant University owed Plaintiff a duty of reasonable care given the special relationship, foreseeable risk, and the University's control over Plaintiff's conditions of participation.

144.    Defendant University breached those duties, causing Plaintiff foreseeable emotional and psychological harm.

145.    Plaintiff suffered damages including anxiety, depression, emotional exhaustion, and the need for ongoing treatment.

## Count X - Negligent Hiring, Retention, and Supervision
## (Against Defendant University)

146.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

147.    Defendant University owed a duty to exercise reasonable care in hiring, retaining, supervising, and disciplining coaching staff, including Defendant Verdi.

148.    Defendant University knew or should have known of Defendant Verdi's abusive, retaliatory, and discriminatory tactics and failed to intervene, investigate, or impose corrective action.

149.     Defendant University's negligence and deliberate indifference were a substantial factor in Plaintiff's injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jasmine Timmerson respectfully requests that this Court enter judgment in her favor and against Defendants and award the following relief:

**A.      Declaratory Relief**

- A declaration that Defendant University violated Title IX by subjecting Plaintiff to a hostile educational environment, unlawful retaliation, and denial of equitable grievance procedures;
- A declaration that Defendant Verdi violated Plaintiff's constitutional rights under the Fourteenth Amendment, actionable through 42 U.S.C. § 1983.

**B.      Injunctive Relief**

- An order requiring Defendant University to remove adverse notations and adverse documentation related to Plaintiff's participation, scholarship non-renewal, or forced transfer from her academic, athletic, and compliance records;
- An order enjoining Defendant University and its agents from retaliating against Plaintiff or other students who report discrimination, harassment, or abuse;
- An order mandating institutional reforms, including clear and enforceable protections for student-athlete mental health and fair grievance procedures.

**C.      Compensatory Damages**

- An award of compensatory damages in an amount to be determined at trial for emotional distress, mental anguish, reputational harm, educational disruption, lost scholarship benefits, medical expenses, and other economic and non-economic losses.

**D.      Punitive Damages**

- An award of punitive damages against Defendant Verdi in his individual capacity for willful, malicious, and recklessly indifferent conduct, in an amount sufficient to punish and deter similar future conduct.

**E.      Attorneys' Fees and Costs**

- An award of reasonable attorneys' fees, expert witness fees, and litigation costs pursuant to 42 U.S.C. § 1988 and any other applicable authority.

**F.      Other Relief**

- Such other and further relief as this Court deems just, equitable, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: <u>February 6, 2026</u>

Keenan Holmes, Esquire
PA ID #204520
Ebony Law, LLC

213 Smithfield Street
Pittsburgh, PA 15222

724.263.7530
kh@ebonylaw.com